IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MISSEY A. DURAN,

       Plaintiff,

v.                                                No. CIV 11-844 LFG

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

       Defendant.


**MEMORANDUM OPINION AND ORDER**

       **THIS MATTER** is before the Court on *pro se* Plaintiff Missey A. Duran's ("Duran")

"Motion to Reverse and Remand and Incorporated Memorandum of Law," filed June 4, 2012. [Doc.

24.]  The Commissioner of Social Security issued a final decision denying benefits, finding that

Duran was not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") or

Supplemental Security Income ("SSI") benefits.  The Commissioner filed a response to Duran's

motion.  [Doc. 25.]  On August 23, 2012, instead of filing a reply, Duran filed a notice stating she

did not understand the government's response to her motion and that she needed legal

representation.  [Doc. 28.] The Court construed Duran's pleading as a request for appointment of

counsel, which it denied. [Doc. 29.] The Court permitted Duran an extension of time to file a reply

[Doc. 29], but none was filed.  The Court considers this matter ready for resolution.

I.      **PROCEDURAL RECORD AND BACKGROUND**

       On about December 18, 2008, Duran applied for SSI and DIB. [AR 136-44; 145-146.] She

initially alleged she became disabled on November 9, 2008. [AR 136, 145.] Subsequently, during

the ALJ hearing, Duran amended her alleged disability onset date to April 1, 2006. [AR 14.]  Duran

contends that she is disabled due to a "broken neck." [AR 168.] She alleged she was unable to work due to "limited mobility" and because she could not "fully turn from side to side."  "I have a torn artery in my neck.  I am unable to bend or lift anything heavy." [AR 168.] On the same disability form, Duran stated she stopped working on March 15, 2006 because "it didn't work with my schedule." [AR 168.]

Duran's SSI and DIB applications were denied at the initial and reconsideration levels.[1] [AR 59-64.] On the social security determination forms, Duran's age was noted as 29 and her diagnoses were listed as MDD [major depression], severe without psychosis, status post C3-4-5 fusion on November 2008 or status post anterior cervical fusion. [AR 59, 62.] While the psychiatric review form indicated moderate mental impairments in social functioning, the mental residual functioning report showed she had the mental capacity for semi-skilled work. [AR 61.] The explanation of the social security's denial of benefits noted Duran alleged impairments due to "broken neck, anxiety, panic attacks, PTSD [post traumatic stress syndrome], and headaches." [AR 64.]

On August 18, 2010, an ALJ, from Fort Worth, Texas conducted a videotaped administrative law hearing  held in Santa Fe "from Albuquerque, New Mexico." [AR 33.] Duran was present in Santa Fe and was accompanied by counsel. [AR 34.] The ALJ appeared in Albuquerque with a vocational expert.  [AR 34.] Counsel for Duran first explained that the more accurate alleged onset date was April 1, 2006, not November 9, 2008. [AR 35.] Counsel further noted that Duran was

---

[1]Although Duran appears *pro se* during this appeal, she was represented by counsel with respect to the underlying applications for benefits.  On November 9, 2009, her attorney submitted a letter to the SSA, stating that on October 22, 2009, Duran called counsel's office to dismiss counsel as her representative "because the [SSA] was taking too long at the reconsideration stage." [AR 77.] Counsel explained that delays of four to six months at the reconsideration stage were typical, but that Duran was blaming counsel for the delay.  Counsel withdrew representation as of this date, but asked that her case be made a priority and decided immediately. [AR 77.] Notwithstanding the November 9, 2009 letter, counsel represented Duran at the later ALJ hearing and submitted a letter on her behalf to the Appeals Council. [AR 222-225.]

diagnosed a few months ago with bipolar disorder, although she suffered from bipolar disorder symptoms all of her life.

With respect to Duran's work history, at the ALJ hearing, counsel described that Duran had worked for 26 different employers. According to counsel, the longest job she held was at Furr's Market for about one year. The remaining jobs lasted from three to six months. [AR 36.] In the ALJ's extensive written decision, issued October 28, 2010 [AR 14-25], the ALJ denied Duran's benefit applications, noting that Duran's past relevant work was as a stocker/clerk at Walmart, a cashier/checker/sacker at Furr's Grocery Store, and a self-employed house cleaner. [AR 23]

The earnings record indicates Duran made about $3000 to $11,000 a year from 1996 to 2003. [AR 147.] Most of her earnings were in the $5000-$7000 range. [Doc. 158.] She earned about $2700 in 2006. [AR 159.]

After denial of her benefit applications, Duran filed a request for review. [AR 135.]  On August 8, 2011, the Appeals Council denied Duran's request for review. [AR 1-6.]  In so doing, it considered counsel's letter, dated December 23, 2010, submitted on Duran's behalf, and additional records from the Santa Fe Community Guidance Center. [AR4, 222-225, 588-614.  On September 21, 2011, Duran filed a form "civil rights complaint" [Doc. 1], asking that she be given a "fair hearing for [her] social security review."

Duran was born on February 20, 1979 [AR 59], and was 29 years old at the time of the hearing. [AR 24.] She has an 11-year old son, who lives mostly with his grandparents. [AR 36.] At the ALJ hearing, she testified she lives with her aunt in Santa Fe. [AR 43.] Duran's benefit applications stated that she had never been married, but lives in a home that a relative owned or was buying. [AR 137.] The monthly mortgage, which Duran did not pay, was  $2,350.00 monthly. [AR 143.] Duran receives food stamps. [AR 46.]

Duran dropped out of high school in the 11th grade but attained her GED in 1999. She took some courses in paralegal work at TVI and was hoping to study for operating room technician in Dallas. [AR 374.] During the ALJ hearing, Duran testified that she had not completed her paralegal course work at TVI, but was currently enrolled in Santa Fe Community College where she again was in the paralegal program. [AR 45.] She expected to complete the online program in another year. She was taking community college classes in algebra, music appreciation and introductory to philosophy and doing all right with her course work. [AR 45.]

## II.   STANDARDS FOR DETERMINING DISABILITY

In determining disability, the Commissioner applies a five-step sequential evaluation process.[2]  The burden rests upon the claimant to prove disability throughout the first four steps of this process, and if the claimant is successful in sustaining her burden at each step, the burden then shifts to the Commissioner at step five.  If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.[3]

Briefly, the steps are: at step one, claimant must prove she is not currently engaged in substantial gainful activity;[4] at step two, the claimant must prove her impairment is "severe" in that it "significantly limits her physical or mental ability to do basic work activities . . . .;"[5] at step three, the Commissioner must conclude the claimant is disabled if she proves that these impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App.

_____

[2]20 C.F.R. § 404.1520(a)-(f) (1999); Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

[3]20 C.F.R. § 404.1520(a)-(f) (1999); Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989).

[4]20 C.F.R. § 404.1520(b) (1999).

[5]20 C.F.R. § 404.1520(c) (1999).

1 (1999);[6] and, at step four, the claimant bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work.[7]  If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, at step five, that considering claimant's RFC,[8] age, education and past work experience, she is capable of performing other work.[9]

At step five, the ALJ can find that the claimant met her burden of proof in two ways: (1) by relying on a vocational expert's testimony; and/or (2) by relying on the "appendix two grids." Taylor v. Callahan, 969 F. Supp. 664, 669 (D. Kan. 1997).  For example, expert vocational testimony might be used to demonstrate that the claimant can perform other jobs in the economy. Id. at 669-670.  If, at step five of the process, the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove she cannot, in fact, perform that work.[10]

In this case, the ALJ determined at step five that Duran could perform work existing in significant numbers in the national economy based on the grids and testimony from the vocational expert. [AR 24.] Specifically, the ALJ concluded that Duran could perform the jobs of bill sorter and file clerk. [AR 24.]

---

[6]20 C.F.R. § 404.1520(d) (1999).  If a claimant's impairment meets certain criteria, that means her impairment is "severe enough to prevent him from doing any gainful activity."  20 C.F.R. § 416.925 (1999).

[7]20 C.F.R. § 404.1520(e) (1999).

[8]One's RFC is "what you can still do despite your limitations."  20 C.F.R. § 404.1545(a).  The Commissioner has established RFC categories based on the physical demands of various types of jobs in the national economy.  Those categories are: sedentary, light, medium, heavy and very heavy.  20 C.F.R. § 405.1567 (1999).

[9]20 C.F.R. § 404.1520(f) (1999).

[10]Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

III.   **STANDARD OF REVIEW**

On appeal, the Court considers whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standards.  Langley v. Barnhart, 373 F.3d 1116, 1118 (10th Cir. 2004).  To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere scintilla, but it need not be a preponderance.  Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003); Langley, 373 F.3d at 1118; Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004).  The Court's review of the Commissioner's determination is limited.  Hamilton v. Sec'y of HHS, 961 F.2d 1495, 1497 (10th Cir. 1992).  The Court may not substitute its own judgment for the fact finder, nor re-weigh the evidence.  Langley, 373 F.3d at 1118; Hamlin, 365 F.3d at 1214; Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir. 1991).  Grounds for reversal also exist if the agency fails to apply the correct legal standards or to demonstrate reliance on the correct legal standards.  Hamlin, 365 F.3d at 1114.

It is of no import whether the Court believes that a claimant is disabled.  Rather, the Court's function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied.  Hamilton, 961 F.2d at 1497-98.  In Clifton v. Chater, the Tenth Circuit described, for purposes of judicial review, what the record should show:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence he rejects.

Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (internal citations omitted).   If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed.

## IV.   ALJ'S DECISION

After "careful consideration of all the evidence" [AR 14], the ALJ denied Duran's request for SSI and DIB.   [AR 14-25.] The ALJ observed that Duran's earnings record indicated she acquired sufficient quarters of coverage to remain insured through June 30, 2009.  Thus, Duran had to establish disability on or before that date to be entitled to DIB. [AR 14.] The Commissioner combined the relevant periods of review for DIB and SSI, stating that the relevant period of review was April 1, 2006 through October 28, 2010. [Doc. 25, n.1.]

The ALJ determined Duran had not engaged in substantial gainful activity since April 1, 2006, the amended alleged onset date. [AR 16.]  The ALJ found that Duran had the following severe impairments: "posttraumatic stress disorder, generalized anxiety disorder with panic attacks, and alcohol abuse in partial remission." [AR 16.] The ALJ further discussed Duran's history of a C3 to C5 fusion with normal motor and sensory function.  The ALJ noted medical records from a Dallas, Texas hospital documenting an "unrestrained driver in a motor vehicle accident on November 9, 2008."  Duran had injuries included a "right C4 lamina fracture," "a grade 4 right vertebral artery injury, and a right medial orbital wall blowout fracture," but was noted to be "neurologically intact." [AR 16.] Anterior cervical disc fusion was performed on November 12, 2008. [AR 17.] Later records showed that Duran's fusion was an "extremely stable construct." [AR 17.] By the end of March 2009, Duran had tried dancing and had no complaints of pain with any movement.  The ALJ commented that at the hearing, Duran testified she received no further treatment for her neck injuries.  The review of medical records indicated she did not take any analgesics for neck pain.

7

Moreover, Duran, as observed by the ALJ, wrote in a disability report that her neck was healed a year before October 2009. [AR 17.] Thus, the ALJ thoroughly explained why she did not find Duran's neck impairment to constitute a "severe" impairment at step two. [AR 17.]

The ALJ did not find that Duran's impairment or combination of impairments met or medically equaled a listed impairment. [AR 17.] The ALJ carefully considered each of Duran's mental impairments and the pertinent listings, but found she did not meet listing criteria of either 12.06 or 12.09. [AR 18.] In so finding, the ALJ observed Duran's daily activities, her social functioning, in which she had moderate difficulties, and her concentration, persistence or pace where she also had moderate difficulties. [AR 18.] The ALJ's discussion of the listing criteria, the paragraph B and C criteria, could not be more thorough and detailed. [AR 18-19.]

With respect to Duran's RFC, and after careful consideration of the entire record, the ALJ determined that she had the RFC to perform a full range of work at all exertional levels but with the certain nonexertional limitations:

> [Duran] is capable of simple and some detailed tasks, she is unable to work around the public, she is able to have only occasional, superficial contact with co-workers, and she cannot work in close proximity to co-workers.

[AR 19.] In making the RFC finding, the ALJ discussed portions of the medical and disability record in five single-spaced pages of the decision. [AR 19-23.] The ALJ found that Duran's medically determinable impairments could reasonably be expected to cause the alleged symptoms, including anxiety, panic attacks, migraines, trouble sleeping, loss of weight, nausea, depression, mood swings, PTSD "with constant thoughts of suicide," but that her statements concerning the intensity, persistence and limiting effects of the symptoms was not entirely credible. [AR 19.]

Again, the ALJ's analysis of the records, concerning Duran's symptoms and credibility, could not be more extensive. [AR 20-23.] The ALJ described emergency room records from 2003 and 2006, a psychiatric consultative examination by Dr. Michael Gzaskow, his diagnoses and findings, Duran's function reports, a behavioral health assessment in 2009, a psychiatric evaluation in 2009, social worker's records indicating Duran failed to maintain a certain number of appointments and improvement as to functioning, a friend's offer of a job at his law firm and Duran's decision to decline the job, her attendance in school, her medications, and mental status examination. [AR 21.] The ALJ also discussed a licensed social worker's medical assessment of Duran's ability to work, as of September 14, 2010.  The social worker wrote that Duran had slight limitations in her ability to remember locations and work-like procedures; to understand and remember very short and simple instructions, to understand and remember detailed instructions; to carry out very short and simple instructions; and to carry out detailed instructions."  The social worker found moderate restrictions in Duran's ability to perform activities within a schedule, maintain regular attendance, and be punctual.  She had marked limitations in her ability to maintain attention and concentration for extended periods of time, to work in coordination with others without being distracted, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and other functions. [AR 22.]

While the ALJ listed all of the social worker's findings and limitations, the ALJ found her opinions to be "unsupported by her treatment notes or those of Dr. Dunn. [AR 22.] It was apparent from the medical records that Duran was able to socialize with her friends and was not as socially isolated as the social worker's assessment indicated.  Duran's own testimony at the hearing was convincing evidence that she could maintain attention for sufficient periods to attend to her school studies.  Moreover, the ALJ did not consider a social worker to be an appropriate medical source

for social security purposes, and for all these reasons, gave the social worker's opinions "little weight." [AR 22.]

The ALJ also considered Duran's testimony at the hearing, but expressly found a number of inconsistencies between that testimony and Duran's disability reports. For example, the ALJ noted that while Duran testified at the hearing she had not worked since the alleged onset date in 2006, a note from her therapist on October 13, 2009, indicated Duran was working as a dancer. [AR 23.] "The fact that Ms. Duran provided inaccurate information on a matter so integral to determining disability suggests that much of what she has alleged may be similarly unreliable." [AR 23.] After noting numerous other inconsistencies in the testimony and record, the ALJ further wrote:

> Although the inconsistent information provided by Ms. Dunn may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by her generally may not be entirely reliable.

[AR 23.] The ALJ proceeded by explicitly summarizing the weight she assigned to each provider's or consultant's opinions. [AR 23.]

The ALJ next found that Duran was unable to perform her past relevant work as those jobs required contact with the public. [AR 23.] In deciding whether Duran could do other work in the national economy, the ALJ considered Duran's age, education, work experience, RFC, and her acquired work skills from past relevant work that were transferrable. [AR 24.] The ALJ relied on the VE's testimony that Duran's RFC would permit her to perform the jobs of bill sorter and file clerk. [AR 24.] The VE's testimony was found to be consistent with the Dictionary of Occupational Titles. [AR 25.] While Duran's ability to perform work at all exertional levels was compromised by nonexertional limitations, the ALJ found there were a significant number of jobs she could perform,

based on the VE's testimony and the grids. [AR 25.] Thus, the ALJ concluded that Duran was not disabled and not entitled to DIB or SSI benefits. [AR 25.]

## V.   <u>MEDICAL HISTORY AND BRIEFING</u>

Duran's medical records are extensive. For example, the administrative record in this case is over 600 pages, many of which document medical treatment, along with disability forms. However, the Court does not summarize the administrative record here because Duran failed to identify any errors by the ALJ in her briefing. Duran's opening brief contains six paragraphs. She notes the procedural history, including the dates she filed her benefit applications and the ALJ's ultimate finding of no disability. [Doc. 24, at 1-2.] Duran also provides a definition of disability and states she was in a motor vehicle accident and was on "an aspirin regimen with regard to the grade 4 right vertebrae artery injury." [Doc. 24, at ¶ 2.]

Duran discusses her mental impairment by summarizing some of the diagnoses from medical records or the DSM-IV (<u>Diagnostic and Statistical Manual of Mental Disorders</u> -4[th] ed.) [Doc. 24, at ¶ 3.] Duran notes she was evaluated by Dr. Dunn "as a result of Alcohol disorder and Panic disorder" and diagnosed with bipolar disorder. "My doctor was in the process of still evaluating." [Doc. 24, at ¶ 4.]

In the fifth paragraph[11] of her brief, Duran observes that she had missed appointments and was not meeting requirements. She proceeds to provide a definition of "bipolar mania" and states she was off her medication and "relapsed back to alcohol for self-medication." [Doc. 24, at ¶ 5.]

In the last paragraph of her brief, Duran notes Dr. Gzaskow's opinions that Duran had "moderate difficulties in regard to concentration, persistence or pace," but that she was able to

---

[11]There are two paragraphs Duran identified as number 5 in her brief. [Doc. 24, at pp. 3-4.]

"understand directions in a structured/supportive environment . . . ."  Duran further states that she

was diagnosed with "ADHD" on April 16, 2010, and was given permission by her mental therapist

and Dr. Miller to relieve her of her school "duties due to failure to meet expectations of assignments,

tests, and attendance," as of March 21, 2012, well after the pertinent time frame for her benefit

applications. [Doc. 24, at p. 4.] Duran alleged:

> It is very hard for me to stay persistent and follow a daily routine as
> well as show up on time or be present.  I usually start tasks and
> cannot finish them.  This makes it difficult to stay at [sic] in one
> place for a long period of time, I usually get irritable and agitated and
> feel confined, in which I usually leave and go to a secluded place.

Finally, Duran asks that her case be "reevaluated and taken into consideration," that she

believes her lawyer rushed her case and did not do his job, and that she has no representation and

is unable to obtain representation "due to the lack of research on his part." [Doc. 24, at p. 4.]

## VI.   <u>ANALYSIS</u>

The Court recognizes that at this stage of the proceeding, Duran is acting *pro se*.  The Court

construes a *pro se* brief "liberally and [holds it] to a less stringent standard than formal pleadings

drafted by lawyers."  <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Tenth Circuit

Court of Appeals further instructs:

> Although a pro se litigant's pleadings are to be construed liberally
> and held to a less stringent standard than formal pleadings drafted by
> lawyers, this court has repeatedly insisted that pro se parties follow
> the same rules of procedure that govern other litigants.  Thus,
> although we make some allowances for the pro se plaintiff's failure
> to cite proper legal authority, his confusion of various legal theories,
> his poor syntax and sentence construction, or his unfamiliarity with
> pleading requirements, the court cannot take on the responsibility of
> serving as the litigant's attorney in constructing arguments and
> searching the record.

Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (citations, internal

quotation marks, and brackets omitted).

Here, it appears that Duran hopes the Court will fill in as her advocate since she failed to

identify any challenges she might have with respect to the ALJ's findings and conclusions at steps

one through five of the sequential process.  This would require the Court to search the entire record,

compare the record to the ALJ's thorough analysis, and attempt to construct arguments for Duran

on issues she did not identify.  Duran's brief merely recounts some of the medical evidence, a few

diagnoses, and some medical definitions.  While Duran may think that a diagnosis alone entitles her

to a finding of disability, this is untrue.  *See* Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988) (a

claimant cannot prove disability through a diagnosis); Lavery v. Astrue, 2012 WL 3276711, *9

(S.D.Tex. Aug. 8, 2012) (unpublished) (a diagnosis alone is not enough to establish a disability

under the Social Security Act; the claimant must show that he was "so functionally impaired by [an

impairment] that he was precluded from engaging in any substantial gainful activity") (citation

omitted).

Duran's brief sets forth no express arguments that the ALJ's findings were not supported by

substantial evidence or that the ALJ committed legal error.  In other words, Duran's brief provides

the Court with nothing to review under the pertinent legal standards.  *See* Lax v. Astrue, 489 F.3d

1080, 1084 (10th Cir. 2007) (upon review, the court determines whether substantial evidence

supports the ALJ's factual findings and whether the ALJ applied the correct legal standard);

Fischer–Ross v. Barnhart, 431 F.3d 729, 730 (10th Cir. 2005) (this court reviews an ALJ's decision

to ensure it is "free from legal error and supported by substantial evidence").

The Court is not a mind reader; it cannot dissect Duran's scant brief and imagine what issues

she might have intended to raise.  Indeed, the Court is prohibited from undertaking this role of

13

Duran's legal representative. <u>Hall</u>, 935 F.2d at 1110.  *See* <u>Hines v. Jones</u>, 373 F.App'x 890, 891-92 (10th Cir. Apr. 22, 2010) (unpublished) (In addition to the fact that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant," [] judges are not mind readers and should not be expected to guess at what a litigant might intend.") (internal citation omitted).

Stated differently, Duran's brief might be construed to ask the Court to view the evidence in a light more favorable to her than did the ALJ or to address issues not raised before the ALJ.  For example, her request that the Court give her a case a "reevaluation" and another round of "consideration" might be considered an invitation to generally reconsider her claims of disability. However, the Court cannot do this.  It is not the Court's province to "reweigh the evidence [or] substitute our judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008).  Nor can the Court "round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." <u>Whitney v. New Mexico</u>, 113 F.3d 1170, 1173-74 (10th Cir. 1997); <u>Drake v. City of Ft. Collins</u>, 927 F.2d 1156, 1159 (10th Cir. 1991).  Moreover, a court may not assume that a plaintiff can prove facts that have not been alleged or similarly, support arguments that were not made. *See, e.g.,* <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983); <u>Whitney</u>, 113 F.3d at 1173-74; <u>Drake</u>, 927 F.2d at 1159.  *See also* <u>Lindley v. Life Investors Ins. Co. of Am.</u>, 2010 WL 2541704, *2 (N.D.Okla. June 18, 2010) (unpublished) (the defendant's request for a "closer inspection" of the selected documents is not a basis for reconsideration).

## VII.   <u>CONCLUSION</u>

Having made a review of the record as a whole, including the ALJ's detailed discussion of the medical records and analysis, Duran's medical treatment and diagnoses, disability forms,

including descriptions of daily activities, testimony of Duran and the vocational expert, and opinions of treating health care providers and medical consultants, the Court finds that the ALJ's evaluation and ruling are supported by substantial evidence. Further, the Court finds that the ALJ applied the correct legal standard in accordance with the SSA and pertinent regulations in determining that Duran did not have a disability. Therefore, the Commissioner's findings and decision are affirmed.

IT IS THEREFORE ORDERED that Missey A. Duran's motion to reverse and remand [Doc. 24] is DENIED and that this matter and the complaint are DISMISSED, WITH PREJUDICE.

Lorenzo F. Garcia
United States Magistrate Judge

15